Commonwealth *v.* Williams, Appellant.

Submitted March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard Bank* and *John W. Packel*, Assistant Defenders, and *Vincent J. Ziccardi*, Defender, for appellant.

*David Richman,* Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., December 11, 1974:

Following a waiver of trial by jury and a plea of not guilty, appellant was convicted by Judge DWYER of two aggravated robberies, one burglary, and two firearms violations. On this appeal he does not attack these convictions. He contends rather that we should remand the record for an evidentiary hearing to determine whether his waiver of trial by jury was knowing and intelligent. In support of this contention he cites *Commonwealth v. Williams,* 454 Pa. 368, 312 A. 2d 597 (1973).

In *Williams,* it was held that the record must show that the defendant "knew the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving. These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel. In *Commonwealth v. Fugmann,* 330 Pa. 4, 198 A. 99 (1938), these rights were held to be a necessary and integral part of the Pennsylvania Constitutional provision requiring that "the 'trial by jury shall be as heretofore, and the right thereof remain inviolate,' Pa. Const. art. I, §6, P.S. [Footnote omitted.]" *Id.* at 373, 312 A. 2d at 600. In the present case the record contains an extensive colloquy. However, that colloquy does not specifically show that appellant knew of his right to participate in the selection of the jury panel. If *Williams* is applicable, therefore, a remand is required.

In *Commonwealth v. Lockhart,* 227 Pa. Superior Ct. 503, 322 A. 2d 707 (1974), we held that the rule in

*Williams* should not be applied to cases tried before its decision. "[C]ases tried before Williams . . . should be reversed only if the appellant can demonstrate the waiver was involuntary or unknowing. The burden [of that demonstration] . . . rests upon the appellant." *Id.* at 507-08, 322 A. 2d at 709. The trial in the present case was on May 13, 1971. *Williams,* however, was filed on November 26, 1973. It would therefore seem that under *Lockhart* we must hold that appellant may not invoke *Williams,* and that we should dismiss the appeal. Before arriving at this conclusion, however, some further comment is in order, for the basis of deciding whether an appellate decision announcing a new rule should be applied retroactively is not always clearly understood. To clarify the reasoning it is necessary to distinguish three situations.

The first situation is when the appellate decision is not filed until after the conviction in question has become final, *i.e.,* either no appeal from the conviction was taken and the time for appeal has expired, or an appeal was taken and on the appeal the conviction was affirmed. In this situation a true question of retroactivity is presented, and in deciding whether the appellate decision should be applied retroactively, the court will "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker,* 381 U.S. 618, 629 (1965). *See Commonwealth v. Godfrey,* 434 Pa. 532, 254 A. 2d 923 (1969) (refusing to apply the rule of *Boykin v. Alabama,* 395 U.S. 238 (1969), retroactively because of the consequent impact on the courts).

The second situation is where the appellate decision is filed after the conviction but before the conviction has become final, *i.e.,* either the time for taking an appeal from the conviction has not expired, or an ap-

peal has been taken but has not yet been decided. In this situation a true question of retroactivity is not presented, and in reviewing the conviction the court may apply the new rule announced by the appellate decision. *Linkletter v. Walker, supra,* at 622 n.5; *Commonwealth v. Ellsworth,* 421 Pa. 169, 176-77, 218 A. 2d 249, 253 (1966); *and see Commonwealth v. Dutton,* 453 Pa. 547, 307 A. 2d 238 (1973) (sentence on December 1, 1971; appeal taken; in deciding appeal, *Commonwealth v. Futch,* 447 Pa. 389, 290 A. 2d 417, filed April 20, 1972, applied). However, whether the court does apply the new rule will depend on the nature of the rule; this qualification will be discussed below.

The third situation is in between the first two: The conviction has become final; however, an appeal *nunc pro tunc* is allowed, and the appellate decision is filed while that appeal is pending. The question then becomes this: Does the fact that an appeal *nunc pro tunc* has been allowed so undo the finality of the conviction as to make the appellate decision applicable in the disposition of that appeal? In some circumstances the answer to this question is "yes", and an appellate court will review an appeal *nunc pro tunc* just as it would a direct appeal. Thus in *Commonwealth v. Linde,* 448 Pa. 230, 293 A. 2d 62 (1972), the question was whether the defendant was entitled to the benefit of the rule announced in *Mapp v. Ohio,* 367 U.S. 643 (1961). The defendant had been convicted on September 6, 1958. On November 10, 1971, the Supreme Court "permitted an appeal to be filed as if timely. . . ." *Commonwealth v. Linde, supra,* at 231 n.1, 293 A. 2d at 63 n.1. In deciding that appeal the Court applied the *Mapp* rule, citing *Linkletter v. Walker, supra,* for the proposition that "the Mapp ruling [is] applicable to any judgment not finalized," and holding that "[s]ince an appeal nunc pro tunc is a direct attack on the judgment of

sentence, [the defendant] gets the benefit of the Mapp ruling and its progeny." *Commonwealth v. Linde, supra,* at 232 n.2, 293 A.2d at 63 n.2. And in *Commonwealth v. Heard,* 451 Pa. 125, 301 A. 2d 870 (1973), the same decision was reached.[1]

It will be observed that the present case falls within the third of these three situations. As was noted above, appellant was tried on May 13, 1971. Motions in arrest of judgment or for new trial were filed, argued, and denied. An appeal was filed but evidently not perfected. On December 4, 1972, Judge DOTY held a post-conviction hearing, and on January 2, 1973, he entered an order allowing an appeal *nunc pro tunc.* It is that appeal that is now before us. During its pendency the appellate decision on which appellant relies, *Commonwealth v. Williams, supra,* was filed. This might suggest that appellant's contention that we should apply *Williams* is justified. In fact, the contention is fallacious, but it is important to understand why it is, not only as regards this case but also as regards *Commonwealth v. Lockhart, supra. Lockhart* falls within the second of the three situations. If appellant is correct that we should apply *Williams* here, in deciding an appeal *nunc pro tunc,* we should also have applied it in *Lockhart,* where the appeal was a direct appeal, *Williams* being filed while that appeal was pending.

The fallacy in appellant's contention is that it ignores the nature of the new rule announced by *Williams.* In *Commonwealth v. Linde, supra,* and *Commonwealth v. Heard, supra,* the intervening appellate decision was, as has been noted, *Mapp v. Ohio, supra.*

---

[1] In *Heard,* however, Mr. Justice POMEROY, in a dissenting opinion in which the Chief Justice joined, expressed the view that in deciding an appeal *nunc pro tunc* the appellate court is not obliged to apply a later decision, as it would in deciding a direct appeal, but should instead weigh the merits and demerits of the particular case, as was done in *Linkletter v. Walker, supra.*

In other words, in those cases the situation presented was from the defendant's point of view as follows: At the time of his trial the contention that his constitutional right not to be unreasonably searched had been violated was of little significance, for even granting the violation, he had no trial remedy for it, since under the then prevailing law the most he could do would be to maintain a separate action to recover damages for the unreasonable search. Then, subsequent to his conviction the *Mapp* opinion was filed. Thus, when the Supreme Court decided in *Linde* and *Heard* that *Mapp* should be applied, it was responding to a situation where the record disclosed that as of the first trial there had been a violation of the defendant's constitutional rights. That is not the situation presented here, nor was it the situation presented in *Williams*. In *Williams,* the record did not disclose a violation of a constitutional right. True, the colloquy did not specifically determine whether the defendant knew of his right to participate in the selection of the jury panel; but that did not disclose a violation of the defendant's right to a jury trial, for even though the defendant was not asked whether he knew he could participate in the selection of the jury panel, he may in fact have known he could. The point of *Williams* was to make sure he was asked. However, until *Williams* it had not been established by any appellate decision that that should be done. Thus *Williams* announced a rule that by its nature is not retroactive but rather became applicable only from *Williams* on. That is why *Williams* is not applicable to a case tried before it was filed, whether the case is reviewed on direct appeal as in *Lockhart,* or on appeal *nunc pro tunc* as here. It is also why, as the Court in *Williams* made plain, the failure of the trial judge to conduct an adequate on-the-record colloquy will not result in a new trial; instead an evidentiary hearing will be required to determine whether despite

the inadequate colloquy the defendant's waiver was knowing and intelligent. *Commonwealth v. Williams, supra,* at 372, 312 A. 2d at 599-600. *And see Commonwealth v. Cushnie,* 433 Pa. 131, 134, 249 A. 2d 290, 292 (1969). Similarly, if appellant here can show at a PCHA hearing that his waiver of jury trial was not knowing and intelligent, he may do so. He may not, however, invoke to that end the procedure prescribed in *Williams.*

The judgment of sentence is affirmed.

JACOBS, J., concurs in the result.